# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-00842-COA

ROOSEVELT RESHARD WILLIAMS A/K/A
ROOSEVELT RISHARD WILLIAMS A/K/A
ROOSELVELT R. WILLIAMS A/K/A
ROOSEVELT WILLIAMS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT: 04/17/2019
TRIAL JUDGE: HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED: MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: ROOSEVELT RESHARD WILLIAMS
(PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: JOHN R. HENRY JR.
NATURE OF THE CASE: CIVIL - POST-CONVICTION RELIEF
DISPOSITION: AFFIRMED - 06/09/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1. Roosevelt Williams was on probation when he was arrested for possession of a firearm and other alleged crimes. He was indicted on the former charge, and the State sought for his probation to be revoked. After a hearing, the trial court granted revocation. Williams filed a petition for post-conviction relief (PCR), which was denied.

¶2. Williams appealed, arguing that because the charge that was the basis for his revocation was later dismissed by nolle prosequi, the revocation was improper. After review, we affirm.

# FACTS

¶3.    In 2010, Williams plead guilty to three felonies—one count of shooting into an occupied dwelling and two counts of aggravated assault. His guilty plea gained him the advantage of serving only seven years on one count and "a stay of execution conditioned on [his] future good behavior and conduct" during five years of "probation or post release supervision subject to the terms and conditions thereof[.]" The terms of his supervised probation specifically provided that Williams "maintain good behavior and conduct and obey the laws of this State . . . [and] all other States . . . and of the United States . . . including, but not limited or otherwise restricted to, those prohibiting the use or possession of firearms by persons who have been convicted of a felony." The terms also required that he pay certain court costs.

¶4.    Nonetheless, in 2017 Williams was arrested during his time on probation. While driving, he had failed to come to a complete stop at a stop sign—and after he was pulled over, the police officer noticed a revolver in the back seat of the car. Williams then fled. He was ultimately arrested for escape, possession of a weapon by a convicted felon, and aggravated assault.

¶5.    The State then filed a petition to revoke his probation based upon the arrest for those crimes, coupled with the failure to pay $1,759 in supervision fees and $377.50 in court costs. By the time of the revocation hearing, a grand jury in Madison County had indicted Williams solely on possession of a firearm by a felon.

¶6.    During the revocation hearing, the State argued that it had "shown it's more likely

2

than not this defendant violated the terms and conditions of his probation" because he had been indicted and a "firearm was also found behind the seat of the [car] he was sitting in, in a vehicle that he was driving, and that another firearm was also found in the vehicle that was in another location." Counsel for Williams argued that he had not yet been found guilty of that charge and that even though he had been arrested for multiple crimes, he had only been indicted for one.

¶7. The trial court found that the terms and conditions of the suspended sentence and probation had been violated and revoked Williams' probation.

¶8. A little less than three months after the revocation, the State filed a motion to nolle prosequi the indictment against Williams, stating that it did not have the evidence to sustain a conviction. A few months after that, Williams filed a PCR petition, arguing that his probation was unlawfully revoked because the indictment had been dismissed via nolle prosequi.

¶9. After Williams filed his PCR petition, the trial court sua sponte ordered the case file to be supplemented with his criminal file, including the revocation hearing. As a result, the trial court saw the breadth of the claims and defenses at stake. Having reviewed the full file, the trial court determined "that it plainly appears from the face of the petition that Petitioner is not entitled to any relief" and dismissed the petition. Williams timely appealed.

## STANDARD OF REVIEW

¶10. This Court reviews the dismissal of a PCR petition for an abuse of discretion. *Williams v. State*, 110 So. 3d 840, 842 (¶11) (Miss. Ct. App. 2013). We will not reverse a

dismissal absent a finding that the trial court's decision was clearly erroneous; however, we review issues of law under a de novo standard. *Salter v. State*, 184 So. 3d 944, 948 (¶10) (Miss. Ct. App. 2015).

## DISCUSSION

¶11. Mississippi Rule of Criminal Procedure 27.3(f)(1) governs the revocation of probation and sets out that "[t]he judge must find by a preponderance of the evidence that a violation of the conditions of probation or the instructions occurred." When that standard is met, a trial court "may revoke, modify, or continue probation." MRCrP 27.3(g). Related, "incarceration shall not automatically follow nonpayment" of fines, but is reserved for situations "only after the court has examined the reasons for nonpayment and finds, on the record, that the probationer could have satisfied payment but refused to do so." MRCrP 27.3(f)(3).

¶12. Williams claims only one point of error on appeal—that the trial court was in error to deny his request for relief because the indictment was dismissed after the revocation hearing. In support, he relies on our general rule that "the mere arrest of a probationer is not a violation of probation." *Elkins v. State*, 116 So. 3d 185, 188 (¶12) (Miss. Ct. App. 2013) (brackets omitted). Furthermore, "when the underlying charges are dismissed before a revocation hearing occurs, proof of the arrest alone is *insufficient* to prove that the defendant committed the act that violated the parole condition." *Id*. (emphasis in original).

¶13. Yet that particular procedure is applied "when there is an acquittal or dismissal of the underlying criminal charges . . . prior to completion of the revocation hearing. . . ." *Id*. at (¶13). In this case, at the time of the revocation hearing, Williams' indictment had not yet

been dismissed by nolle prosequi. The question before us is whether the trial court had "a preponderance of evidence that a violation of the conditions of probation or the instructions occurred." MRCrP 27.3(f)(1).

¶14. We have previously examined a similar scenario where a probationer "had been arrested and charged with involvement in a . . . drug sale" and had his suspended sentence revoked, but the "drug charges were ultimately dismissed[.]" *Hardin v. State*, 878 So. 2d 111, 112 (¶1) (Miss. Ct. App. 2003). The petitioner sought relief from the revocation, which the trial court denied. *Id*. Just as here, in *Hardin* the "sole issue" was whether "the trial judge erroneously revoked his probation when the charge that was the basis for such revocation was dismissed." *Id*. at (¶2).

¶15. In that decision, we hewed closely to our standard of review and concluded that during the revocation hearing the trial court "reasoned that the evidence clearly showed [the defendant] was in violation of his probation and, therefore, the judge revoked [his] probation." *Id*. at 113 (¶4). At the PCR stage, the trial court "concluded that [the petitioner's] probation was not revoked for guilt of another crime, but was revoked because extensive evidence was produced to show that [he] violated the terms of his probation in participating in the sale." *Id*. at (¶5).

¶16. The standard for revocation is not the high one required for conviction, but whether a preponderance of the evidence shows there was a violation at the time of the revocation. MRCrP 27.3(f)(1). Because the trial court in *Hardin* "based [its] decision for revocation on this premise, and the [trial court] reviewing [the] petition for post-conviction relief found no

5

error," we affirmed. *Hardin*, 878 So. 2d at 113 (¶5).

¶17.    The same result must be reached here. The trial court had before it during the revocation hearing more than a mere arrest of the probationer. Williams' indictment for possession of a firearm by a convicted felon was compounded with allegations by the State that he had also fled from arrest, committed aggravated assault, and failed to pay the required supervision fees and court costs. The trial court found this met the preponderance of the evidence standard to revoke, and the fact that the indictment was later nolle prossed does not require the automatic reversal of that decision.

¶18.    Because the trial court was within its discretion in denying the request for post-conviction relief, we affirm.

¶19.    **AFFIRMED.**

    **BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

    **WESTBROOKS, J., SPECIALLY CONCURRING:**

¶20.    I agree with the majority that we should affirm the denial of the requested post-conviction relief in this case. However, I write separately to emphasize that our affirmance should not be construed as unfettered permission for the State to indict on new charges, revoke probation for prior charges, and then dismiss the new charges via nolle prosequi. In order to safeguard the integrity of our judicial system, we must ensure there is no gamesmanship in this process.

¶21.    There is an old adage among the criminal bar—again so old that no one is certain to

whom it should be attributed—that says "the quickest way to jail is probation." Arrests not resulting in convictions may be used for other, less formal means of exacting a substantial punishment. The record presented makes it questionable whether the State's evidence was enough to meet the burden of proof beyond a reasonable doubt. No doubt the indictment of Williams met the preponderance-of-the-evidence standard, and it was just enough to land him in prison for the remainder of his sentence. Yet the evidence of the charge that led to Williams's incarceration was ultimately deemed insufficient to sustain a conviction. This Court has held that when probation is revoked based on a new arrest, probation need not be reinstated because the new charges are dismissed if the evidence shows that it is more likely than not that the offender violated the terms of his probation. *Johnson v. State*, 909 So. 2d 122, 126 (¶15) (Miss. Ct. App. 2005).

¶22.    To this point I am reminded that the State has vast powers in seeking an indictment against a private citizen and furthering prosecution. This is why over the centuries both the federal and state constitutions developed a bill of rights—to protect the citizens from the power of the State to seek a criminal conviction. *See* U.S. Const. amend. V (prohibiting double jeopardy and guaranteeing the rights to due process and freedom from self-incrimination); Miss. Const. art. 3, §26 (extending similar guarantees as well as affirming that "the accused shall have a right to be heard by himself or counsel, or both" and "to have compulsory process for obtaining witnesses in his favor").

¶23.    Likewise I am reminded that the bar for obtaining an indictment from a grand jury is low, unlike the high burden at trial for conviction, which requires a unanimous jury to find

7

that a defendant committed the crimes beyond a reasonable doubt. In contrast, a grand jury may return an indictment "upon affirmative vote of twelve (12) or more grand jurors," whether there are fifteen or twenty-five grand jurors, witnesses are rarely heard, and a defendant does not present his side of the story. MRCrP 13.6(a). It is simply much easier to obtain an indictment than to secure a conviction. I caution the State against manipulating the grand jury process to use it as leverage and "as an opportunity to incarcerate [a probationer] swiftly and at relatively little expense." Rodney F. Kingnorth, Randall C. MacIntosh & Sandra Sutherland, *Criminal Charge or Probation? Prosecutorial Discretion and Implications for Research in Criminal Court Processing*, 40 Criminology (Issue 3) 553, 555 (2002).

¶24. As the majority notes, it is well-settled that "our supreme court has been emphatic that when the underlying charges are dismissed before a revocation hearing occurs, proof of the arrest alone is *insufficient* to prove that the defendant committed the act that violated the parole condition." *Elkins v. State*, 116 So. 3d 185, 188 (¶12) (Miss. Ct. App. 2013). Under precedent, if the State dismisses the charges by a nolle prosequi *before* the revocation, it may not be able to meet the burden of revocation at a hearing. Yet if the State just waits a few months to nolle pros the charges, it could potentially succeed on having the defendant's prior charges revoked.

¶25. There are other recognized advantages of probation violation: lesser burden of proof, savings of court, witness time, reduction of delay, admissibility of otherwise excludable evidence and usually the elimination of hearings, motions and trials. Kingnorth et al., *supra*,

at 556. Also, our Court has held that there is no per se right to appointed counsel at a revocation hearing. *Britton v. State*, 241 So. 3d 639, 644 (¶13) (Miss. Ct. App. 2018). That is why we must carefully scrutinize this procedure, so there will be no arbitrary deployment of the State's powers to indict and then seek revocation of prior charges. Our Rules of Criminal Procedure caution that they "are to be interpreted . . . to protect the rights of individuals while protecting the public." MRCrP 1.2. We must be mindful that "the State's police power rises to an unconstitutional level when that power is exercised in an arbitrary manner." *Pro-Choice Miss. v. Fordice*, 716 So. 2d 645, 652 (Miss. 1998). To that end, we must not allow gamesmanship by the State in the timing of dismissal of charges and the revocation of probation. *C.f. Edwards v. State*, 465 So. 2d 1085, 1086 (Miss. 1985) (reversing conviction when a plea bargain was violated and the defendant was convicted because "[t]he integrity of the state's law enforcement and prosecutorial powers is seriously impu[g]ned by any lack of good faith in complying with plea bargaining agreements").

¶26. While there is no proof in this case that there was an effort by the State to coordinate the revocation before the new charges were nolle prosequied, it is undisputed that the new charges *were* dismissed after the defendant was revoked. However, the pending charges were sufficient to obtain the revocation of probation. I write to emphasize that if the State believes it will have insufficient proof to convict based on the indictment, it should dismiss the charges sooner, rather than later. The pending indictment should not be kept "in the back pocket" until a defendant's probation is revoked on prior charges.

¶27. I do not write against the right or the need to revoke probationers who refuse to abide

by the sentencing terms set by the Court and the Mississippi Department of Corrections. The prosecutor, as a minister of justice, wields a great deal of power; and my concern is always that its power be used constructively.

**McDONALD, J., JOINS THIS OPINION.**